# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MARK LINDSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:20-cv-00062** |
| | ) | |
| **LEWIS COLLIER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

After losing millions of dollars in a Ponzi scheme, Plaintiff Mark Lindsey brought this fraudulent transfer action, based on diversity, against twenty-one Defendants who he alleges profited from the scheme at his expense. Before the Court are twelve motions to dismiss the Second Amended Complaint,[1] (<u>see</u> Doc. Nos. 106, 108, 111, 115, 117, 119, 121–26), all of which have been fully briefed and are ripe for review (<u>see</u> Doc. Nos. 109, 112, 116, 118, 120, 127, 129, 137, 140–46). Lindsey also filed a Motion to Dismiss Counterclaim of Defendants Larry Frasier, Mark Frasier, and Steve Holland (Doc. No. 94), which has also been fully briefed (<u>see</u> Doc. Nos. 99, 102). For the following reasons, the Court will deny in part Defendants' motions and grant Lindsey's motion.

---

[1] For ease of reference, the Court will refer to the Second Amended Complaint (Doc. No. 105) as "Complaint" or "Compl."

## I.      BACKGROUND AND FACTUAL ALLEGATIONS[2]

From 2012 through 2016, Jeffrey Gentry and Wendy Gentry operated a Ponzi scheme[3] in which they falsely represented to investors that they would use investor-funds to purchase farm-related equipment at discounted prices. (Compl. ¶¶ 27–41; Doc. No. 1-2 at 6, 9). The Gentrys further promised investors high returns and guaranteed that they could later resell that equipment at full price through their contracts with the State of Tennessee, other states, and entities. (Compl. ¶¶ 27–41; Doc. No. 1-2 at 6, 9). In August 2017, Jeffrey Gentry pled guilty to federal wire fraud and money laundering charges and admitted that he, "at all times, knew there were no State contracts and [that] no equipment had been, or would be, purchased with the investor-victim funds."[4] (Compl. ¶ 34 (quoting Doc. No. 1-2 at 6)). "Instead, he used the money to subsidize his lifestyle, amassing assets worth a substantial amount of money, including numerous tracts of real estate and vehicles." (Doc. No. 1-2 at 6).

Lindsey, a Nevada citizen, alleges that he invested $6 million in the Gentrys' scheme and lost more than $5 million in the process. (Compl. ¶¶ 29, 37–41). According to Lindsey, the Gentrys acted "with an actual intent to hinder, delay, or defraud" him by transferring "money from [his] investments" to twenty-one individuals and companies with direct or indirect ties to the Gentrys (hereinafter, "Defendants"). (Id. ¶¶ 54–92). And based on Lindsey's "information and belief,"

---

[2] The Court draws the facts in this section from the Complaint (Doc. No. 105) and assumes the truth of those facts for purposes of ruling on the instant motions. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[3] "A Ponzi scheme is a fraudulent enterprise in which the scheme operator solicits investments, usually with the promise of high returns, and then uses funds obtained from new investors to make payments to earlier investors." In re Rivas, No. 08-12333, 2012 WL 1156406, at *1 (Bankr. E.D. Tenn. Apr. 6, 2012).

[4] As part of Jeffrey Gentry's plea agreement, the United States agreed not to seek criminal charges against Wendy Gentry for her role in the Ponzi scheme. (Doc. No. 1-2 at 19).

these Defendants were "net winners" and "profited from the scheme at [his] expense." (Id. ¶¶ 53, 73). As a result, Lindsey filed this lawsuit against Defendants for violating the Tennessee Uniform Fraudulent Transfer Act ("TUFTA"), Tenn. Code Ann. § 66-3-301, et seq., seeking both damages for "the value of the assets transferred, or the amount necessary to satisfy Lindsey's claims," and an injunction preventing Defendants from further disposing of those assets. (See Compl. at 13 ("Prayer for Relief")). He also asserts that the Court has jurisdiction based on diversity because, "on information and belief," each Defendant is a Tennessee citizen and "the amount in controversy is in excess of $75,000." (Id. ¶¶ 1–23).

Most of the Defendants have now filed motions to dismiss,[5] including Defendants Willard Greene and Burton Sullivan (Doc. No. 106); Adam Gooch, Christa Gooch, Jessica Jones, Kenneth Jones, Kenneth Jones Company, Inc., and Wes Southerland (Doc. No. 108); Loyd Finley (Doc. No. 111); Carolyn Gentry (Doc. No. 115); Larry Frasier, Mark Frasier, and Steve Holland (Doc. No. 117; Anthony Findley (Doc. No. 119); and Lewis Collier, Sunset Rock Farms, LLC, Curtis Copeland, Charlie Halliburton, Chase Halliburton, and Rorey Halliburton (Doc. Nos. 121–26)[6]. These motions seek to dismiss the Complaint for, among other things, lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to join necessary parties, and some Defendants have also moved for a more definite statement. Lindsey also filed a motion to dismiss Larry Frasier, Mark Frasier, and Steve Holland's counterclaim for fraudulent transfer. (Doc. No. 94). Because these requests involve different legal standards, the Court will address them as separate motions below.

---

[5] Defendant Kenneth Jones Jr. is the only Defendant who has not filed a motion to dismiss.

[6] Each of these six Defendants is represented by the same attorney who filed a combined memorandum of law in support of their motions. (See Doc. No. 127).

3

## II.    DEFENDANTS' MOTIONS TO DISMISS UNDER RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

A.    Legal Standard

"When a motion [to dismiss] is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since, if it must dismiss the complaint for lack of subject matter jurisdiction, the other defenses and objections become moot and need not be determined." Mich. State Emps. Ass'n v. Marlan, 608 F. Supp. 85, 87 (W.D. Mich. 1984); see also Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). And "where subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." Wayside Church v. Van Buren Cnty., 847 F.3d 812, 817 (6th Cir. 2017) (quoting Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986)).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014) (citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)). Where, as here, defendants make a facial attack, the Court must take all of the allegations in the complaint as true and determine "whether the plaintiff has *alleged* a basis for subject matter jurisdiction." Id. (emphasis added).

B.    Analysis

Many of the motions to dismiss have facially attacked the Complaint, arguing that Lindsey has neither plausibly alleged that he has standing to bring this lawsuit nor that the Court has diversity jurisdiction. (See Doc. Nos. 106, 111, 117, 119, 121–26). The Court will address each of these issues below.

1.      Standing

A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Forest City Residential Mgmt., Inc. *ex rel.* Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley, 71 F. Supp. 3d 715, 722–23 (E.D. Mich. 2014) (citing Stalley v. Methodist Healthcare, 517 F.3d 911, 916 (6th Cir. 2008)). To establish Article III standing at the pleading stage, a plaintiff must allege facts plausibly demonstrating that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)); see also Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 581 (6th Cir. 2016). The plaintiff has the burden of satisfying all three prongs "separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

The first two prongs are clearly satisfied here because the Complaint alleges that Lindsey suffered a monetary injury caused by the Gentrys' fraudulent transfers to Defendants. However, the parties dispute whether Lindsey satisfied the third prong by plausibly alleging that his injuries are likely to be redressed by a favorable judicial decision. The moving Defendants argue that even if the Court voided the allegedly fraudulent transfers between the Gentrys and Defendants, it would not redress Lindsey's injuries because he could not receive any further relief directly from Defendants. The Court disagrees.

"[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." Larson v. Valente, 456 U.S. 228, 244 n.15 (1982). Because Lindsey brings his claims under TUFTA, the Court must look at what remedies are available under that statute to determine whether the relief Lindsey is seeking could provide

5

redress for his alleged injuries. As an initial matter, the Complaint sufficiently alleges facts supporting its claims that Lindsey is a "creditor," the Gentrys are "debtors," and Defendants are "transferees," as those terms are defined under TUFTA, and the Court accepts those claims as true for purposes of ruling on the motions to dismiss. (Compl. ¶¶ 77–84).

TUFTA provides remedies to creditors when insolvent debtors fraudulently transfer assets to third parties. Automotive Experts, Inc. v. Kallberg, No. 3:19-cv-00982, 2021 WL 2260058, at *7 (M.D. Tenn. June 3, 2021). If the Court ultimately determines that the Gentrys' transfers are voidable under TUFTA, § 66-3-309(b) provides that the creditor (Lindsey) "may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less." Tenn. Code Ann. § 66-3-309(b). That section further provides that the Court may enter judgment against "[t]he first *transferee* of the asset or the person whose benefit the transfer was made" or against "[a]ny subsequent *transferee* other than a good-faith transferee or obligee who took for value or from any subsequent transferee or obligee." See Bavelis v. Doukas, No. E2017-02050-COA-R3-CV, 2018 WL 4672646, at *3 (Tenn. Ct. App. Sept. 27, 2018) (quoting Tenn. Code Ann. § 66-3-309(b)(1)–(2)) (emphasis added); see also JRS Partners, GP v. Warren, No. 3:17-cv-01258, 2021 WL 1143829, at *5 n.11 (M.D. Tenn. Mar. 25, 2021). Moreover, Lindsey may also obtain "[a]n injunction against further disposition by the debtor *or a transferee*, or both, of the asset transferred or of other property." Tenn. Code Ann. § 66-3-308(a)(3)(A) (emphasis added). Because the Complaint seeks these damages and injunctive relief against Defendants under TUFTA, (see Compl. at 13 ("Prayer for Relief")), the Court finds that a judgment against Defendants will likely redress Lindsey's alleged injuries.

Accordingly, the Court finds that Lindsey has plausibly alleged Article III standing.

2.     Diversity Jurisdiction

Several Defendants also argue that Lindsey has not plausibly alleged that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, which provides that federal district courts have original jurisdiction over all civil actions "between [] citizens of different States" where "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1). The Court does not find these arguments convincing, and instead concludes that the Complaint satisfies both the "complete diversity" and "amount in controversy" requirements.

a.     Complete Diversity

Jurisdiction based on "diversity of citizenship requires complete diversity between all plaintiffs on one side and all defendants on the other side." Glancy v. Taubman Ctrs., Inc., 373 F.3d 656, 664 (6th Cir. 2004) (citing Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996)). To satisfy this requirement, the Complaint alleges that Lindsey is a Nevada citizen and all twenty-one Defendants are, "[u]pon information and belief," Tennessee citizens. (Compl. ¶¶ 1–22). In response, the moving Defendants argue that the Complaint's "upon information and belief" allegations are insufficient to plead diversity jurisdiction.

By Order entered on August 3, 2021, the Court noted that "there is case law, though non-binding, holding that information and belief allegations are insufficient to establish diversity jurisdiction." (Doc. No. 175 at 2 (quoting ERMC, LLC v. Millertown Pavilion, LLC, No. 3:19-CV-407-DCP, 2020 WL 6689339, at *3 (E.D. Tenn. Nov. 12, 2020))). The Court also flagged another line of cases holding that "a plaintiff [is] permitted to plead on information and belief that the defendants were citizens of different states," but "[i]f the defendants deny that the court has jurisdiction, the district court should evaluate the record created by the parties to determine its jurisdiction." Id. (quoting Carolina Cas. Ins. Co. v. Team Equip., Inc., 741 F.3d 1082, 1087–88 (9th Cir. 2014)).

7

Given these cases and the challenges to Lindsey's "on information and belief allegations," the Court asked the parties whether they would agree that there is complete diversity in this case. (See Doc. No. 175). The parties responded by filing a joint status report stipulating that nineteen of the twenty-one Defendants are not citizens of Nevada. (Doc. No. 179). The remaining two Defendants, Curtis Copeland and Burton Sullivan (proceeding pro se), were not able to stipulate to diversity because Mr. Copeland is now deceased and Mr. Sullivan is going through conservatorship proceedings. (Id. at 1). But because neither Mr. Copeland nor Mr. Sullivan moved to dismiss the Complaint for lack of diversity jurisdiction, the Court can reasonably infer that their citizenship would not destroy complete diversity in this case.

Accordingly, the Court finds the Complaint plausibly alleges complete diversity under 28 U.S.C. § 1332(a)(1).

b.    Amount in Controversy

In determining whether the "amount in controversy" requirement is satisfied to survive a motion to dismiss, the Court "consider[s] the amount alleged in [the] complaint and [will] not dismiss [the] complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." Charvat v. NMP, LLC, 656 F.3d 440, 447 (6th Cir. 2011) (Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416 (6th Cir. 1996)). In other words, the "sum claimed by the plaintiff controls if the claim is apparently made in good faith." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 276 (1977) (quoting St. Paul Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938)). However, "[d]ismissal for failure to satisfy the requisite jurisdictional amount may be appropriate when the facts indicate that a plaintiff claimed certain damages merely to obtain federal court jurisdiction." Mitan v. Int'l Fidelity Ins. Co., 23 F. App'x 292, 297 (6th Cir. 2001).

8

Here, the Complaint alleges that: (1) Lindsey lost millions of dollars in the Gentrys' Ponzi scheme, (2) "Defendants took millions of dollars in fictitious profits," and (3) "the amount in controversy is in excess of $75,000 exclusive of interest and costs for *each* Defendant." (Compl. ¶¶ 23, 53, 67) (emphasis added). In his response, Lindsey also clarified that he is alleging "that each and every Defendant received transfers in excess of $75,000," and that he is not "aggregating claims to achieve this amount." (Doc. No. 137 at 6). Taking these allegations as true, the Court cannot determine to a legal certainty at this time whether the amount in controversy is $75,000 or less, and, therefore, the Court will not dismiss the Complaint for failing to allege that the Court has diversity jurisdiction.[7]

## III.   DEFENDANTS' MOTIONS TO DISMISS UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

### A.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal,

---

[7] The parties should keep in mind that the Court's "determination that [Lindsey] has made the prima facie showing of jurisdiction necessary to survive a motion to dismiss does not relieve him from ultimately having to prove jurisdiction by a preponderance of the evidence if [Defendants] again raise[] the jurisdictional issue later in the action." Long John Silver's, Inc. v. DIWA III, Inc., 650 F. Supp. 2d 612, 619 (E.D. Ky. 2009) (citing Serras v. First Tenn. Bank Nat. Assn., 875 F.2d 1212, 1214 (6th Cir. 1989)); see also Dean v. Motel 6 Operating LP, 134 F.3d 1269, 1272 (6th Cir. 1998) ("It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction.").

556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). And "[w]hile the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Where, as here, a plaintiff's claims are based on fraud, Rule 9(b) provides that the complaint must state with particularity the circumstances constituting fraud. However, "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with [Rule] 8," which requires only "a short and plain statement of the claim" made by "simple, concise, and direct allegations." United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 503 (6th Cir. 2007) (citing Michaels Bldg. Co., 848 F.2d at 679). "So long as [the plaintiff] pleads sufficient detail – in terms of time, place and content, the nature of [the] fraudulent scheme, and the injury resulting from the fraud – to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." United States ex rel. SNAPP, Inc. v. Ford Motor Co., 532 F.3d 496, 504 (6th Cir. 2008); see also Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 878 (6th Cir. 2006) ("At a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud.") (citation omitted). "The Rule's purpose is to alert defendants 'as to the particulars of their alleged misconduct' so that they may respond." Chesbrough v. VPA, PC, 655 F.3d 461, 466 (6th Cir. 2011) (quoting United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 503 (6th Cir. 2007)). "The heightened pleading standard is also designed to prevent fishing expeditions, to protect defendants' reputations from allegations of fraud, and to narrow

potentially wide-ranging discovery to relevant matters." Id. at 466–67 (citations and internal quotation marks omitted); see also Bennett v. MIS Corp., 607 F.3d 1076, 1101 (6th Cir. 2010).

B. Analysis

Defendants argue that Lindsey failed to state a plausible claim of fraudulent transfer under Rule 8 and did not plead fraud with particularity under Rule 9. They also argue that Lindsey's claims are barred by TUFTA's statute of repose in Tenn. Code Ann. § 66-3-310. For the reasons explained below, the Court is not persuaded by Defendants' arguments but will require Lindsey to provide more factual allegations to show that his claims are timely.

1. Lindsey's Allegations Satisfy the Requirements of Rule 8 and 9(b)

Defendants first argue that the Court should dismiss Lindsey's claims under Rule 12(b)(6) because the Complaint's allegations are conclusory and fail to state a plausible claim for relief under Rule 8. Contrary to Defendants' contentions, however, the Court does not find anything confusing or impermissibly vague about the Complaint's allegations that the Gentrys fraudulently transferred at least $75,000 of Lindsey's money to each Defendant while operating a Ponzi scheme between 2012 and 2016. (See Compl. ¶¶ 23, 82). At a minimum, these allegations give Defendants sufficient notice of Lindsey's claims and the grounds upon which they rest so that Defendants can prepare an adequate answer.

But more importantly, the Court also finds that these allegations state a plausible claim for relief under TUFTA. Although the Complaint asserts that "[t]he Gentrys' transfers of assets to Defendants were fraudulent transfers" and violated TUFTA generally, (see Compl. ¶ 75), Lindsey's opposition brief clarifies that he is bringing his claims solely under § 66-3-305(a)(1) for "actual fraud."[8] (See Doc. No. 137 at 16–17). Section 66-3-305(a)(1) provides that "[a] transfer

---

[8] Given Lindsey's concession, there is no need for the Court to analyze his claims under TUFTA's "constructive fraud" provisions. See Tenn. Code Ann. § 66-3-305(a)(2).

made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Tenn. Code Ann. § 66-3-305(a)(1). Because the Complaint clearly alleges that the Gentrys transferred Lindsey's money to Defendants, the only remaining issue is whether those transfers constituted actual fraud.

Whether a transfer is actually fraudulent under § 66-3-305(a)(1) "is determined by reference to the intent of the debtor-transferor in making the transfer; *the state of mind of the transferee is irrelevant*."[9] In re Davis, No. 05-15794-L, 2016 WL 11696269, at *9 (Bankr. W.D. Tenn. June 15, 2016) (emphasis added). A plaintiff may show that the debtor-transferor had fraudulent intent by alleging "badges of fraud," i.e. circumstantial evidence of "any fact that throws suspicion on the transaction and calls for an explanation." Reagan v. Connelly, No. E2000-00451-COA-R3-CV, 2000 WL 1661524, at *4 (Tenn. Ct. App. Nov. 6, 2000) (quoting Macon Bank, 715 S.W.2d at 349). "The presence of *one or more* of the badges of fraud gives rise to a presumption of fraud and consequentially shifts the burden of disproving fraud to the defendant." Id. (citing Macon Bank, 715 S.W.2d at 349) (emphasis added). But where, as here, the underlying fraud constitutes a Ponzi scheme, the Court may presume that the debtor made the transfers with "actual intent" under TUFTA, so long as the transfers at issue serve to further that scheme. In re Davis, 2016 WL 11696269, at *9 (citations omitted); Warren, 2021 WL 1143829, at *5 (citation and internal quotation marks omitted). Given Lindsey's plausible allegations that the Gentrys operated a Ponzi scheme (supported by evidence of Jeffrey Gentry's criminal conviction), the Court may

---

[9] Because the "fraudulent transfer provisions of the Bankruptcy Code and [TUFTA] are substantially similar, . . . conclusions reached under the Bankruptcy Code are applicable to actions under the uniform act." In re Davis, 2016 WL 11696269, at *5.

12

invoke the so-called "Ponzi scheme presumption" and reasonably infer that the Gentrys intended to defraud Lindsey when they allegedly transferred his money to Defendants in furtherance of their scheme. Because the Complaint plausibly alleges that the Gentrys had an actual intent to defraud, the Court will not dismiss Lindsey's fraudulent transfer claims for failing to satisfy Rule 8.

Defendants also argue that Lindsey did not plead his fraudulent transfer claims with particularity as required by Rule 9(b) because the Complaint makes blanket allegations that "Defendants" collectively received fraudulent transfers, without differentiating their conduct or alleging dates, dollar amounts, or specific details about any of their transactions. Again, the Court disagrees that it should dismiss the Complaint on these grounds.

"While the Sixth Circuit has not ruled on [TUFTA], it appears that Rule 9(b) would apply, as the Sixth Circuit has previously subjected Ohio's enactment of the UFTA, which is identical to Tennessee's enactment, to this heightened pleading standard." United States v. Buaiz, No. 3:07-cv-83, 2008 WL 5204147, at *2 (E.D. Tenn. Dec. 11, 2008) (citations omitted). And as Defendants correctly note, this heightened pleading standard would normally require Lindsey to specify the "who, what, when, where, and how of the alleged" fraudulent transfers. See United States ex rel. Roycroft v. Geo Grp., Inc., 722 F. App'x 404, 406 (6th Cir. 2018) (citing Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006)). However, "an exception to the Rule 9(b) particularity requirement exists when the relevant facts 'lie exclusively within the knowledge and control of the opposing party.'" Caboodles Cosmetics, Ltd. P'ship v. Caboodles, LLC, 412 F. Supp. 2d 872, 878 (W.D. Tenn. 2006) (quoting Wilkins ex rel. United States v. State of Ohio, 885 F. Supp. 1055, 1061 (S.D. Ohio 1995)). "In such a case, pleading upon information and belief is permissible," but the plaintiff "must still plead a statement of facts upon which the belief is based." Id. (citing Craighead v. E.F. Hutton & Co., 899 F.2d 485, 489 (6th Cir. 1990)). Moreover, "[a]

13

court should hesitate to dismiss an action when the facts underlying the claim are within the defendant's control, especially when no discovery has been conducted." Id. (citing Michaels Bldg. Co., 848 F.2d at 680)).

Given these legal principles, the Court finds that the specificity requirements of Rule 9(b) should apply less stringently to Lindsey's claims. First, the parties did not take discovery before Defendants filed their motions. Second, although Lindsey at some point generally "learned of the fraudulent transfers and of the identities of the transferees (i.e., the Defendants)," (Compl. ¶ 76), the dates, amounts, and details of these allegedly fraudulent transfers lie exclusively within Defendants' knowledge and control because Lindsey was not a party to any of those transactions. See S. Concrete Prods., Inc. v. Liberty Holdings, LP, No. 1:19-cv-1105-STA-jay, 2019 WL 7758860, at *4 (W.D. Tenn. Sept. 12, 2019) (quoting Whalen v. Stryker, Corp., 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011) ("When 'there has been no discovery in [the] action, and the alleged fraud occurred over an extended period of time, is within the knowledge and control of [the defendants], and consisted of numerous acts[,] the specificity requirements of Rule 9(b) [should] be applied less stringently.'"). Lindsey is therefore permitted to make "upon information and belief" allegations about the transfers at issue.

In support of Lindsey's information and belief, the Complaint pleads and specifies: (1) who participated in the scheme (the Gentrys and Defendants), (2) the general time frame of the scheme (2012 through 2016); (3) that the transfers were allegedly fraudulent because they were made to further a Ponzi scheme, (4) factual details about the scheme itself, (5) the Gentrys' intent to defraud Lindsey, (6) the elements for a claim under § 66-3-305(a)(1), and (7) Lindsey's injury. These allegations sufficiently alert Defendants that Lindsey has accused them of profiting from a Ponzi scheme, and the Complaint provides enough factual information for Defendants to respond

meaningfully to those accusations. <u>See</u> <u>Chesbrough</u>, 655 F.3d at 466. That is enough to survive a motion to dismiss under Rule 12(b)(6). <u>See</u> <u>Liberty Holdings</u>, 2019 WL 7758860, at *4.

To be sure, Defendants may ultimately prevail on summary judgment or at trial (where they will have the benefit of discovery and a more substantial factual record) by showing, among other things, that they acted in good faith, did not profit from the Gentrys' scheme, did not receive money in furtherance of the scheme, or are otherwise not liable under TUFTA. And Lindsey still bears the heavy burden of offering evidence to support his claims against each Defendant. But taking the allegations in the Complaint as true and drawing all reasonable inferences in Lindsey's favor, as the Court is required to do at this stage, the Court finds that the Complaint's allegations sufficiently state a cause of action against Defendants for fraudulent transfers under TUFTA.

>    2.      Lindsey Has Not Sufficiently Pled that His Claims Are Timely Under
>            TUFTA's Statute of Repose

Defendants also argue that Lindsey's claims related to any transfers that occurred after September 23, 2016 (four years from the date Lindsey filed the Complaint) are barred by TUFTA's four-year statute of repose. Under TUFTA's statute of repose, a cause of action "is extinguished" unless it is brought:

>    (1) Under § 66-3-305(a)(1), within four (4) years after the transfer was made or the obligation was incurred or, if later, within one (1) year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
>    (2) Under § 66-3-305(a)(2) or § 66-3-306(a), within four (4) years after the transfer was made or the obligation was incurred; or
>
>    (3) Under § 66-3-306(b), within four (4) years after the transfer was made or the obligation was incurred.

Tenn. Code Ann. § 66-3-310. Because Lindsey brought his claims under § 66-3-305(a), (<u>see</u> Doc. No. 137 at 16–17), only § 66-3-310(1) is relevant here. Thus, Lindsey's claims are barred unless

the allegedly fraudulent transfers at issue occurred before September 23, 2016, *or* within one year after Lindsey discovered or could reasonably have discovered them.

There are two key issues regarding whether § 66-3-310(1) bars Lindsey's claims. The first issue is that the Complaint does not allege the specific dates that the transfers took place, meaning there is no way for the Court to know at this time what, if any, transfers occurred before September 23, 2016. But as the Court explained above, that information is in Defendants' control and will be revealed during discovery, after which the parties can revisit their respective positions on summary judgment.

The second issue is that the Complaint does not allege the specific dates that Lindsey discovered or could have reasonably discovered the allegedly fraudulent transfers. Instead, it merely alleges that: "Lindsey could have only reasonably learned of these transfers within one year of having filed this action, and in fact did only learn of these transfers within one year of filing this action." (Compl. ¶ 94; see also id. ¶¶ 53, 76). This conclusory allegation gives the Court significant pause because there are no factual allegations in the Complaint that support this otherwise formulaic recitation of § 66-3-310(1). Nor does this allegation alone "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, or contain "factual content that allows the court to draw the reasonable inference that" Lindsey's claims are timely, Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); see also Eidson v. State of Tenn. Dept. of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."). Given that TUFTA's statute of repose could potentially dispose of this entire case, Lindsey must provide non-conclusory allegations to support his assertion that his claims are timely.

Accordingly, the Court will *sua sponte* require Lindsey to provide a more definite statement to demonstrate when he discovered the allegedly fraudulent transfers at issue in this case and why he was unable to discover the fraud earlier. See Taylor v. City of Cleveland, No. 1:05CV2983, 2006 WL 1982968, at *1 n.3 (N.D. Ohio July 13, 2006) ("[T]he Court may, *sua sponte*, order Plaintiff to file an amended complaint that clarifies his claims."); Dumas v. Hurley Med. Ctr., No. 10-12661, 2011 WL 35407, at *1 (E.D. Mich. Jan. 5, 2011) ("When a complaint fails to clearly state causes of action such that defendants can be fairly required to respond, the court may issue an order requiring a more definite statement *sua sponte*."); see also SE Property Holdings, LLC v. Phillips, No. 3:15cv554/MCR/EMT, 2016 WL 11529614, at *6 (N.D. Fla. May 4, 2016) (requiring a "more definite statement as to when [a] transfer was discovered" in a fraudulent stock transfer lawsuit). And Lindsey will need to make this amendment within fourteen days, as this information should be readily available to him based on his allegation that he at some point "learned of the fraudulent transfers." (Compl. ¶ 76).

## IV. DEFENDANT CURTIS COPELAND'S MOTION TO DISMISS UNDER RULE 12(b)(5) FOR INSUFFICIENT SERVICE OF PROCESS

Defendant Curtis Copeland individually argues that the Court should dismiss the claims against him under Rule 12(b)(5) because Lindsey did not perfect service in accordance with Rule 4. (Doc. No. 123). According to the proof of service filed on the docket, the process server attempted to serve Mr. Copeland in September 2020 by leaving the summons with Mr. Copeland's wife, Carolyn Copeland. (Doc. No. 40). Mr. Copeland argues that this attempted service was insufficient because he was no longer residing at the address where his wife was served, and instead had been living in a nursing home. (Doc. No. 127 at 15). Unfortunately, Mr. Copeland passed away while his motion was pending with the Court. (Doc. No. 177).

17

Under these circumstances, the Court finds that the most appropriate procedure is to deny Mr. Copeland's pending motion and wait to see if either party files a timely motion to substitute under Rule 25.

## V.    DEFENDANTS' MOTIONS TO DISMISS UNDER RULE 12(b)(7) FOR FAILING TO JOIN A REQUIRED PARTY

Several Defendants have also moved to dismiss the Complaint under Rule 12(b)(7) for failing to join all of the participants in the Gentrys' scheme, including the Gentrys themselves, and the Government as required parties under Rule 19.[10] Rule 12(b)(7) authorizes a defendant to move to dismiss the complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "Dismissal under Rule 12(b)(7) is appropriate 'when there is an absent person without whom complete relief cannot be granted." SDC Fin., LLC v. Bremer, No. 3:19-cv-00525, 2019 WL 4393543, at *11 (M.D. Tenn. Sept. 13, 2019) (citing 5C Charles Alan Wright & Arther R. Miller, Federal Practice and Procedure § 1359 (3d ed. 2004)). "The moving party bears the burden of demonstrating that dismissal is required by Rule 19." Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc., 79 F. Supp. 3d 753, 771 (M.D. Tenn. 2015) (citing Watson ex rel. Estate of Simon v. Herenton, No. 04-2400B, 2005 WL 2177002, *5 (W.D. Tenn. Sept. 8, 2005)). "In a motion to dismiss under Rule 12(b)(7), just as is the case under Rule 12(b)(6), the Court accepts Plaintiff's allegations as true and draws all reasonable inferences in his favor." Young v. WH Adm'rs., Inc., No. 1:17-cv-02829-STA-egb, 2018 WL 4016451, at *2 (W.D. Tenn. Aug. 22, 2018) (citing Nanko Shipping, USA v. Alcoa, Inc., 850 F.3d 461, 465 (D.C. Cir. 2017)).

---

[10] The motion to dismiss filed by Adam Gooch, Christa Gooch, Jessica Jones, Kenneth Jones, Kenneth Jones Company, Inc., and Wes Southerland (Doc. No. 108) is the only motion that does not seek dismissal under Rule 12(b)(7).

18

"The analysis under Rule 19 involves two steps: (1) the court must determine whether the absent parties are required parties; and if so, (2) the court must determine whether, in their absence, equity and good conscience require that the case be dismissed."[11] <u>Bremer</u>, 2019 WL 4393543, at *11 (citing <u>School Dist. of Pontiac v. Sec'y of U.S. Dept. of Educ.</u>, 584 F.3d 253, 264 (6th Cir. 2009) (en banc)). "If the answer to either question is no, then Rule 19 does not" require dismissal. <u>School Dist. of Pontiac</u>, 584 F.3d at 265.

Regarding step one of the analysis, Rule 19(a)(1) provides that an absent party is a "required party" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Thus, the first question is whether the Court can accord complete relief among the existing parties even if the Gentrys or the absentee investor-victims are not joined. <u>See</u> Fed. R. Civ. P. 19(a)(1)(A). Under Defendants' theory, the Gentrys must be joined in this action because, if Lindsey ultimately prevails, the money from the voided transfers will go to the Gentrys

---

[11] The Sixth Circuit has sometimes referred to the Rule 19 analysis as a three-step process, which includes a determination of whether joinder of a required party would deprive the court of subject matter jurisdiction. <u>See</u> <u>Glancy v. Taubman Ctrs., Inc.</u>, 373 F.3d 656, 667 (6th Cir. 2004). The Court has concluded that there is no substantive difference between the three-step approach in <u>Glancy</u> and the two-step approach in <u>School Dist. of Pontiac</u>, however, because Rule 19(a) defines a "required party" as someone "whose joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a). But because <u>School Dist. of Pontiac</u> was decided en banc and has not since been overturned, the Court has decided to adopt the two-step analysis set forth in that case.

and not Lindsey. Moreover, the other investor-victims, particularly Scott Turney who was similarly harmed by the scheme and served as Lindsey's co-plaintiff in a related state court lawsuit against the Gentrys, must be joined or else the Court cannot accord complete relief to all those who were victimized by the Gentrys.

The Court does not find these arguments persuasive because "[a] person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party."[12] Laethem Equip. Co. v. Deere & Co., 485 F. App'x 39, 44 (6th Cir. 2012) (quoting Temple v. Synthes Corp., 498 U.S. 5, 7–8 (1990)). The Sixth Circuit has also made clear that "[c]omplete relief is determined as between persons already parties, 'and not as between a party and the absent person whose joinder is sought.'" Id. (quoting School Dist. of Pontiac, 584 F.3d at 265). So even if the Gentrys and the absentee investor-victims were in fact liable to Lindsey for their involvement in the Ponzi scheme, that does not limit Lindsey's ability to obtain complete relief against Defendants for *their* share of fault, if proven. See id. And if Lindsey succeeds on his claims, TUFTA permits the Court to order Defendants, as transferees of the fraudulent transfers, to turn over their profits from the scheme. See Tenn. Code Ann. § 66-3-309(b)(1). Accordingly, the Court concludes that it can accord complete relief as between Lindsey and Defendants even in the absence of the Gentrys and the other investor-victims not named in this case.

The Court's inquiry does not end there because it must also decide whether the Gentrys or the absentee investor-victims claim an interest relating to the subject of this action, and whether failing to join them may either impair or impede their ability to protect that interest or leave the existing Defendants subject to a substantial risk of incurring multiple or otherwise inconsistent

---

[12] In 2007, the Rules Committee replaced the word "necessary" with the word "required," deleted the word "indispensable," and made other non-substantive changes to Rule 19. See Rep. of Philippines v. Pimentel, 553 U.S. 851, 855–56 (2008).

obligations because of that interest. See Fed. R. Civ. P. 19(a)(1)(B). First, there is no indication that the Gentrys are claiming any interest relating to this action; indeed, they explicitly disclaim any such interest pursuant to the criminal forfeiture provisions in Jeffrey Gentry's plea agreement. (See Doc. 1-2 at 11–16). Second, Defendants focus on the potential interests of Scott Turney and argue that if Turney later sues them, they could be exposed to double, multiple, or inconsistent obligations. Other than the allegation that Turney lost money in the Gentrys' Ponzi scheme, however, there is no indication that Turney is claiming an interest in these Defendants' alleged profits. And even if Lindsey recovers his initial investment in the Gentrys' scheme and obtains "avoidance of the transfer or obligation *to the extent necessary to satisfy [his] claim*," Tenn. Code An. § 66-3-308(a)(1), that would not impair or impede Turney, or any other investor-victim, from protecting their interests and avoiding transfers to the extent necessary to satisfy their claims. Plus, if any of those investor-victims did bring claims against these Defendants for transfers that occurred between 2012 and 2016, those plaintiffs would likely run into major hurdles under TUFTA's statute of repose now that the allegations in this lawsuit are public. Thus, the Court does not find that Defendants face a "substantial" risk of multiple or inconsistent obligations to other potential investor-victims if those absent parties are not joined. See Fed. R. Civ. P. 19(a)(1)(B)(ii).

As a final note, Defendants Larry Fraiser, Mark Frasier, and Steve Holland (hereinafter "Fraiser/Holland Defendants") contend that the Government is a required party because it has already claimed an interest in the scheme's proceeds by executing a forfeiture money judgment against Jeffrey Gentry. (Doc. No. 118 at 20). But having reviewed the forfeiture provisions in Mr. Gentry's plea agreement, which are attached to the Complaint, the Court finds that the Government's forfeiture proceedings are aimed at the Gentrys' assets, not Defendants' assets. Thus, there is no basis to conclude that in the Government's absence these Defendants would be

subject to any risk of incurring inconsistent obligations. And as further indicia that the Defendants will not owe an obligation to the Government, Mr. Gentry's plea agreement states that the Government will seek "substitute property" from Mr. Gentry for the amount that the proceeds of his crimes "have been transferred or sold to, or deposited with, a third party." (Doc. No. 1-2 at 13). This means that the Government will be able to protect its interests in recovering from the Gentrys regardless of whether Defendants incur an obligation to Lindsey for *their* profits.

Ideally, the absent parties referenced above would have been joined as defendants for completeness, but that does not mean they are "required" parties under Rule 19(a). And because the Court finds that the Gentrys, the Government, and the absentee investor-victims are not required parties, there is no need to decide whether, in their absence, the case should be dismissed. Accordingly, the Court will not dismiss the Complaint under Rule 12(b)(7).

## VI. DEFENDANTS' MOTIONS FOR A MORE DEFINITE STATEMENT UNDER RULE 12(e)

Except for the Fraiser/Holland Defendants, all other Defendants have moved in the alternative for a more definite statement under Rule 12(e). (See Doc. No. 120 at 11–14). Rule 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "[A] motion for more definite statement is designed to strike at unintelligibility rather than simple want of detail . . . [and] must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." Midgett v. KSP Head Chaplain, No. 5:11-CV-P132-R, 2012 WL 4098991, at *4 (W.D. Ky. Sept. 17, 2012) (citing Fed. Ins. Co. v. Webne, 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007)) (internal quotation marks omitted). "Federal courts generally disfavor motions for more definite statements," and "[i]n view of the notice pleading standards of Rule

22

8(a)(2) and the opportunity for extensive pretrial discovery, courts rarely grant such motions." Id. As such, a "Rule 12(e) motion based [only] on the belief that a better affirmative pleading by the opposing party will enable [the movant] to provide a more enlightening or accurate response will be denied." Id.

In support of their request for a more definite statement under Rule 12(b)(6), Defendants essentially repeat their Rule 12(b)(6) arguments that Lindsey did not plead with particularity what transfers were fraudulent. But for the same reasons the Court will not dismiss this case under Rule 12(b)(6), the Court also finds that the Complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail. See Midgett, 2012 WL 4098991, at *4. Again, Lindsey's allegation that the Gentrys fraudulently transferred at least $75,000 of his money to each Defendant while operating a Ponzi scheme between 2012 and 2016 constitutes a "short and plain statement" of his fraudulent transfer claim. Thus, the Complaint is sufficient to put Defendants on notice as to the nature of the allegations against them, and this case should therefore proceed to discovery.

Although the Court will require Lindsey to provide a more definite statement with respect to his allegations related to TUFTA's statute of repose (see *supra* Section III.B.2) on its own initiative, see Taylor, 2006 WL 1982968, at *1 n.3, the Court will not otherwise require Lindsey to provide a more definite statement under Rule 12(e).

## VII. LINDSEY'S MOTION TO DISMISS COUNTERCLAIM

In response to the First Amended Complaint (Doc. No. 57), the Fraiser/Holland Defendants filed an Answer and asserted the following counterclaim:

> 1.     As set forth in their answer and affirmative defenses above, the Frasier/Holland Defendants assert that Plaintiff's claims against them lack merit and should be dismissed.

23

> 2. However, if Plaintiff is found to have valid claims against the Frasier/Holland Defendants for fraudulent transfers, then the Frasier/Holland Defendants have valid counterclaims against Plaintiff for fraudulent transfers, because Plaintiff and the Frasier/Holland Defendants are similarly situated with respect to the Ponzi scheme alleged herein.
>
> 3. As a result, if Plaintiff is entitled to a recovery and other relief from the Frasier/Holland Defendants for fraudulent transfers, then the Frasier/Holland Defendants are entitled to a recovery and other relief from Plaintiff for fraudulent transfers.

(Doc. No. 60 at 11–12). Before filing the Second Amended Complaint, Lindsey filed a motion to dismiss the Fraiser/Holland Defendants' counterclaim, arguing that it "fails to allege the elements of a fraudulent transfer claim and lacks any discernable factual support." (Doc. No. 94). As a procedural matter, the issues in Lindsey's motion are still live because "[a] plaintiff's filing of an amended complaint does not moot a counterclaim alleged within an answer to the original complaint." Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Reservation, No. 3:17-cv-01436-GPC-MDD, 2018 WL 3970094, at *7 (S.D. Cal. Aug. 20, 2018) (citation omitted).

In response to Lindsey's motion, the Fraiser/Holland Defendants argue that they do not need to "restate the factual averments contained in [the] complaint in order for [their] counterclaims to be sufficiently pleaded." (See Doc. No. 99 at 2 (quoting Triman Indus., Inc. v. Pentagon 2000 Software, Inc., No. 14-5842 (NLH/AMD), 2015 WL 1969177, at *3 (D.N.J. Apr. 30, 2015))). That may be true, but they certainly must allege *some* factual support for their claim that Lindsey is liable for fraudulent transfers under TUFTA. They must also allege *some* factual support regarding whether their claims are barred by the statute of repose. Without this information, the Court cannot determine whether the Fraiser/Holland Defendants have a plausible claim for relief.

Accordingly, the Court will grant Lindsey's motion in part and dismiss the Fraiser/Holland Defendants' counterclaim without prejudice to them later filing a renewed counterclaim that complies with Rule 8.

## VIII. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be denied, subject to the Court's requirement that Lindsey needs to amend his allegations regarding TUFTA's statute of repose, and Lindsey's motion to dismiss will be granted in part.

An appropriate Order will enter.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Case 2:20-cv-00062   Document 184   Filed 08/18/21   Page 25 of 25 PageID #: 1566