UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| MARK LINDSEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 2:20-cv-00062 |
| LEWIS COLLIER, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Mark Lindsey claims he lost millions of dollars in a Ponzi scheme operated by Jeffrey Gentry and Wendy Gentry.[1] He is suing Willard Greene and Burton Sullivan ("Defendants"), among others, under the Tennessee Uniform Fraudulent Transfer Act ("TUFTA"), alleging they profited from the scheme at his expense. In a nutshell: Mr. Lindsey contends Defendants received fraudulent transfers from the scheme that included money he had invested in it.

Defendants have moved to dismiss Mr. Lindsey's lawsuit. (Doc. Nos. 207, 254). They argue that it is untimely and that Mr. Lindsey did not comply with one of the Court's prior orders. Defendants' motions, which are identical in all relevant respects, have been fully briefed. (Doc. Nos. 208, 236, 238, 255, 259, 261). The Court will deny the motions.

**I.  BACKGROUND**

The Gentrys allegedly operated a Ponzi scheme between 2012 and 2016. (Doc. No. 202 ¶ 84). They lured investors into the scheme by claiming they would use investor funds to purchase

---

[1] "A Ponzi scheme is a fraudulent enterprise in which the scheme operator solicits investments, usually with the promise of high returns, and then uses funds obtained from new investors to make payments to earlier investors." In re Rivas, No. 08-12333, 2012 WL 1156406, at *1 (Bankr. E.D. Tenn. Apr. 6, 2012).

farm equipment, at discounted prices, that they would later sell at a profit. (Id. ¶ 27). They said they had contracts with the State of Tennessee and other entities that would facilitate their plan. (Id.).

The Gentrys' representations to investors were untrue. (Id. ¶ 37). In reality, Mr. Gentry used investors' funds to subsidize his own lifestyle. (Id. ¶ 39). He bought expensive assets, such as real estate and vehicles, for his personal use. (Id. ¶ 39). Mr. Lindsey alleges that he invested $6 million in the Gentrys' scheme. (Id. ¶ 28). Of that amount, he lost more than $5 million. (Id. ¶ 36).

In December 2016, the federal government began investigating the Gentrys. (Id. ¶ 48). It brought criminal charges against Mr. Gentry in July 2017. (Id. ¶ 50). On August 10, 2017, Mr. Gentry pled guilty to wire fraud and money laundering. (Id. ¶ 51).

While the government pursued its criminal charges, Mr. Lindsey pursued civil claims against the Gentrys in state court. (See id. ¶ 52). He obtained discovery from Mrs. Gentry in September 2019.[2] (Id. ¶¶ 54–55). Upon reviewing the discovery, Mr. Lindsey learned that the Gentrys had transferred money from Mr. Lindsey's investments to other individuals, including Defendants. (Id. ¶¶ 58–65, 84, 86). Mr. Lindsey also learned that Defendants were "net winners" in the Ponzi scheme; they had profited from it at his expense. (Id. ¶¶ 63–64). According to Mr. Lindsey, Defendants "were not unwitting investors." (Id. ¶ 80). Instead, they were "close friends and acquaintances of the Gentrys" who "knew the Gentrys' investment scheme was predicated on fraud and that they were benefiting from the fabricated business dealings with the State of Tennessee and other states and entities." (Id. ¶¶ 70, 80).

---

[2] Herein, for ease of reference, the Court occasionally describes actions taken by Mr. Lindsey's counsel as though they were taken by Mr. Lindsey himself.

Mr. Lindsey sued Defendants in this Court on September 23, 2020. (Doc. No. 1). After he amended his complaint twice, Defendants moved to dismiss. (Doc. Nos. 57, 105, 106). The Court denied their motions on August 18, 2021. (Doc. No. 184). However, it ordered Mr. Lindsey to provide a more definite statement regarding when he discovered the allegedly fraudulent transfers. (Id. at 17). Mr. Lindsey subsequently filed a third amended complaint ("Third Amended Complaint"). (Doc. No. 202). Defendants then filed the motions to dismiss that are now before the Court. (Doc. Nos. 207, 254).

**II.     LEGAL STANDARD**

To survive a motion to dismiss, a complaint must "be sufficient to give notice to the defendant as to what claims are alleged" and include "sufficient factual matter to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (citations and quotations omitted). When reviewing a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016). In their analyses, courts generally "may consider only matters properly a part of the complaint or pleadings." Armengau v. Cline, 7 Fed. App'x. 336, 343 (6th Cir. 2001).

"It also bears mentioning that a motion to dismiss is 'generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations.'" Spencer v. City of Hendersonville, 487 F. Supp. 3d 661, 678 (M.D. Tenn. 2020) (quoting Jodway v. Orlans, 759 F. App'x 374, 379 (6th Cir. 2018)); see also Campbell v. Grand Trunk W. R. Co., 238 F.3d 772, 775 (6th Cir. 2001). "This is because the statute of limitations is an affirmative defense, for which the defendant bears the burden of proof." Spencer, 487 F. Supp. 3d at 678. Hence, "a motion to dismiss on statute of

3

limitations grounds should only be granted if the allegations in the complaint affirmatively show that the claim is time-barred." Id. (citation and quotation omitted).

## III. ANALYSIS

Defendants argue the Court should dismiss the Third Amended Complaint because (1) it does not comply with the Court's order for a more definite statement and (2) Mr. Lindsey's lawsuit is untimely.[3] The Court disagrees.

### A. Mr. Lindsey Complied with the Court's Order for a More Definite Statement.

The Court's order for a more definite statement directed Mr. Lindsey to file an amended complaint describing "when he discovered the allegedly fraudulent transfers at issue in this case" and "why he was unable to discover the fraud earlier." (Doc. No. 184 at 17). The Third Amended Complaint does both.

First, the Third Amended Complaint describes when Mr. Lindsey discovered the fraudulent transfers. It states Mr. Lindsey "began to learn that there were other individuals involved in the Gentrys' Ponzi scheme after receiving and then deeply analyzing discovery" from Mrs. Gentry in state court. (Doc. No. 202 ¶ 52). Mr. Lindsey concluded his analysis of the discovery in "early November" of 2019. (Id. ¶ 63). At that time, he learned Defendants were net winners in the Gentrys' Ponzi scheme. (Id. ¶ 64). Accordingly, on November 5, 2019, he sent Defendants letters notifying them that he "had evidence that they had profited from the Scheme." (Id. ¶ 65). Together, the allegations in the Third Amended Complaint show Mr. Lindsey discovered the

---

[3] Technically, Defendants argue Mr. Lindsey's lawsuit is untimely as to any fraudulent transactions predating September 23, 2016. (Doc. No. 208 at 6). That is four years before the date on which Mr. Lindsey originally sued in this Court. (Doc. No. 1). This argument recognizes that Tenn. Code Ann. § 66-3-310(1)—which controls the instant case (see Doc. No. 184 at 15)—includes two potential limitations periods: a one-year period and a four-year period.

4

Case 2:20-cv-00062 Document 316 Filed 06/09/22 Page 4 of 8 PageID #: 5685

fraudulent transfers sometime between November 1, 2019 and November 5, 2019. This satisfies the first requirement for a more definite statement.

Second, the Third Amended Complaint explains why Mr. Lindsey was unable to discover the fraudulent transfers sooner. It alleges that when Mr. Lindsey sought discovery from Mrs. Gentry in state court, she "objected to producing anything in a myriad of ways for a protracted period of time." (Id. ¶ 53). When she finally agreed to produce discovery, around September 2019, Mr. Lindsey sent a truck to her house to pick it up. (See id. ¶¶ 54–55). The discovery "consisted of a pile of dozens of disintegrating, broken, dirty, wet, damaged cardboard boxes sitting on the floor in Mrs. Gentry's garage, full of disorganized documents, dirt, and bugs." (Id. ¶ 54). The documents had to be repackaged into "nearly 100 full banker's boxes of papers." (Id. ¶ 55). Once they were repackaged, Mr. Lindsey "immediately began a painstaking review of the thousands of pages of disorganized documents (some of which were incomplete, torn, and in poor condition) to analyze its use in the lawsuit against the Gentrys and their businesses, including what their finances were." (Id.). Mr. Lindsey alleges he only discovered the fraudulent transfers at the conclusion of this review in November 2019. (Id. ¶¶ 63–64). These allegations constitute a more definite statement as to why Mr. Lindsey did not discover the fraudulent transfers earlier.

Because Mr. Lindsey has satisfied the Court's directive for a more definite statement, the Court will not dismiss the Third Amended Complaint for failure to comply with its order.

B. Mr. Lindsey Timely Filed His Lawsuit.

The Court also will not dismiss Mr. Lindsey's lawsuit as untimely. Under TUFTA, plaintiffs may timely file suit within a year after a fraudulent transfer "was or could reasonably have been discovered." Tenn. Code Ann. § 66-3-310(1). This is known as the "discovery rule." Hamm v. Wyndham Resort Dev. Corp., No. 3:19-CV-00426, 2020 WL 1853577, at *10 (M.D.

Tenn. Apr. 13, 2020). As noted, Mr. Lindsey discovered Defendants' fraudulent transfers in November 2019. (Doc. No. 202 ¶¶ 63–64). He filed suit less than a year later, in September 2020. (Doc. No. 1). And he has alleged facts indicating he could not have discovered the transfers sooner. (Doc. No. 202 ¶¶ 52–69). The Court must accept these facts as true. Courtright, 839 F.3d at 518. Accordingly, Mr. Lindsey's lawsuit is timely under the discovery rule.

Defendants argue Mr. Lindsey may not invoke the discovery rule because he has not alleged the "specific date" on which he discovered the fraudulent transfers. (Doc. No. 208 at 2). There are two problems with this argument. First, Mr. Lindsey's lawsuit is timely regardless of which day in November 2019 he discovered the fraudulent transfers because he filed suit in September 2019. See Tenn. Code Ann. § 66-3-310(1). Second, Defendants' own authority acknowledges that plaintiffs need only plead "the dates and circumstances of the eventual discovery of the underlying fraud" with "as much particularity *as possible*." (Doc. No. 208 at 2 (quoting Bergen v. Rothschild, 648 F. Supp. 582, 587 (D.D.C. 1986) (emphasis added)). Providing a five-day range within which Mr. Lindsey discovered the fraud certainly meets this requirement. The Court rejects Defendants' argument that Mr. Lindsey may not invoke the discovery rule without pleading the exact date in November 2019 on which he discovered Defendants' fraudulent transfers.

Defendants also imply Mr. Lindsey's lawsuit is untimely because he "knew as early as January 2017 that there were other people who had been victimized by the Gentrys." (Doc. No. 208 at 3). But it does not matter when Mr. Lindsey became aware of other *victims* of the Gentrys. His statute of limitations did not begin to run when he learned the Gentrys harmed others; it began to run when he had "either actual or constructive knowledge of a *claim*." Hamm, 2020 WL 1853577, at *10 (emphasis added). That is when Mr. Lindsey discovered (or could have

6

discovered) Defendants injured him by profiting from fraudulent transfers. As discussed, the Third Amended Complaint alleges that occurred in November 2019. Defendants' claim that Mr. Lindsey was aware of other victims in January 2017 is immaterial.

Finally, Defendants argue Mr. Lindsey should have discovered the fraudulent transfers earlier because he should have subpoenaed the Gentrys' bank accounts around March 2017. (Doc. No. 208 at 4). They contend Mr. Lindsey became aware of the bank accounts at that time, relying on a source outside the pleadings (which is a federal court protective order that was also filed in Mr. Lindsey's state court proceedings). (Id. at 3–4). Even if the Court chose to consider that source, it would not require dismissal at this stage.[4] "[C]ourts should not dismiss complaints on statute-of-limitations grounds when there are disputed factual questions relating to the accrual date." Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp., 839 F.3d 458, 464 (6th Cir. 2016). "Examples of such disputed factual questions include . . . complex issues about whether information in the plaintiff's possession sufficed to alert [him] of the claim." Id. Here, even if Mr. Lindsey knew about the Gentrys' bank accounts in March 2017, complex issues would remain as to whether his possession of that information could have (or should have) led him to discover Defendants' fraudulent transfers.[5]

---

[4] For this reason, the Court need not address Defendants' argument that Mr. Lindsey "is judicially estopped from claiming a date of awareness of other persons involved in transactions with the Gentry's [sic] after March 2017." (Doc. No. 255 at 4).

[5] For example: Defendants claim Mr. Lindsey "could easily have discovered Defendant Greene's existence" if he had subpoenaed the Gentrys' financial records. (Doc. No. 208 at 4). Defendants attach "checks Mr. Greene had written to Gentry" in support of this argument. (Id.). But it is unclear why checks written from Mr. Greene to Mr. Gentry would lead Mr. Lindsey to discover a claim against Mr. Greene. After all, such checks would not indicate Mr. Greene profited from the Ponzi scheme. If anything, it seems they would indicate the opposite—that perhaps Mr. Greene was a victim of the scheme.

7

Case 2:20-cv-00062 Document 316 Filed 06/09/22 Page 7 of 8 PageID #: 5688

The Court will not dismiss Mr. Lindsey's lawsuit as untimely because Defendants have not satisfied their burden of demonstrating Mr. Lindsey's statute of limitations has run.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (Doc. Nos. 207, 254) are **DENIED**.

IT IS SO ORDERED.

```
_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE
```